FILED

2015 Jun-05  PM 03:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

JWV/ASW: June  2015

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## <u>SOUTHERN DIVISION</u>

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **RANDY D. VISSER** | ) | |

## <u>INFORMATION</u>

The United States Attorney charges that:

At all times material to this Information:

## <u>Introduction</u>

1.     Serra Nissan is a car dealership, located at 1500 Center Point Parkway, Birmingham, Alabama 35215, in the Northern District of Alabama, that sells new and used cars.

2.     Serra Nissan is co-owned by Anthony Serra, who owns fifty percent of the dealership, and his daughter, Kristina Serra Visser, who owns the other fifty percent.

3.     Serra Visser Nissan is a car dealership located at 1645 2nd Avenue NW, Cullman, Alabama 35055, in the Northern District of Alabama, that also sells new and used cars.

4.      Serra Visser Nissan, at all times material to this information, had three co-owners: Anthony Serra (who owned forty nine percent), defendant **RANDY D. VISSER** (Anthony Serra's son-in-law, who owned forty nine percent), and Kristina Visser Serra (Anthony Serra's daughter, who owned two percent).

5.      Nissan Motor Company Ltd. is a Japanese multinational automobile manufacturer headquartered in Nishi-ku, Yokohama, Japan. Nissan North America Inc. ("NNA"), was created to coordinate all of Nissan's various activities in North America and is headquartered in Franklin, Tennessee.

6.      NNA has many incentive programs it uses to reward dealerships who meet specified sales requirements. Often, each incentive is for a limited time period and has very specific requirements of which cars must be sold, and when.

7.      For example, the Dealer Volume Bonus was a 45-day program with general terms of volumes of cars to be sold. The time period for that incentive began on or around February 15, 2013, and ended on or about April 1, 2013. There was also a "fast start objective" incentive program that lasted from on or about February 15, 2013, until on or about February 28, 2013. If the dealer hit the specified sales targets during this period, they would receive an additional dollar amount per car sold.

8.      Each month, NNA sent dealers an incentive bulletin, roughly 36 pages long, that contains the rules for each incentive NNA has for the time period. The

bulletin is sent to all Nissan dealerships. At the end of the bulletin, the audit process is described.

9.      As one of the terms of its incentive program, NNA prohibited a process known as "pooling of sales." If a dealer owned or was associated with more than one dealership, it could not combine sales or attribute sales from one dealership to another in order to meet sales incentives. Dealers were required to retail delivery report ("RDR") cars accurately, meaning, the dealer had to report where the car was actually sold.

10.      At all times relevant, defendant **RANDY D. VISSER** was the General Manager at Serra Nissan.

**COUNT ONE**
**Conspiracy**
**18 U.S.C. § 371**

**THE CONSPIRACY**

11.      The United States Attorney repeats and realleges the allegations contained in paragraphs 1 through 10 of this Information as though fully set out herein.

12.      From in or about March 2013 and continuing until in or about April 2013, the exact dates being unknown, in or around Jefferson County, within the Northern District of Alabama, and elsewhere, the defendant

**RANDY D. VISSER,**

did knowingly and willfully conspire, combine, and agree with other persons, known and unknown to the United States Attorney, to commit offenses against the United States, that is: to devise and intend to devise a scheme and artifice to defraud Nissan North America, Inc., to obtain money and property belonging to Nissan North America, Inc., by means of materially false and fraudulent pretenses, representations, and promises by use of interstate wire communications and transmissions, in violation of Title 18, United States Code, Section 1343.

## MANNER AND MEANS OF THE CONSPIRACY

13.   It was a part of the conspiracy that defendant **RANDY D. VISSER,** and others both known and unknown to the United States Attorney, conspired to report vehicle sales made at Serra Visser Nissan as having been sold at Serra Nissan, for Serra Nissan to qualify for incentives to which it was not entitled.

14.   It was a further part of the conspiracy that defendant **RANDY D. VISSER,** and others both known and unknown to the United States Attorney, falsified documents and created fake deal jackets to show that cars sold at Serra Visser Nissan had been sold at Serra Nissan, when, in fact, they had not.

15.   It was a further part of the conspiracy that defendant **RANDY D. VISSER**, and others both known and unknown to the United States Attorney, would falsify the information submitted to Nissan North America, Inc., in the retail

delivery report submitted for each car sale, to show that vehicles were sold at Serra Nissan when, in fact, they had been sold at Serra Visser Nissan.

16.     It was a further part of the conspiracy that defendant **RANDY D. VISSER**, and others both known and unknown to the United States Attorney, created false documents to avoid detection in the event that Nissan North America, Inc. conducted an audit on any of the sales.

17.     It was a further part of the conspiracy that defendant **RANDY D. VISSER**, and others both known and unknown to the United States Attorney, pooled sales between Serra Visser Nissan and Serra Nissan so that both dealerships would qualify for incentive payments from Nissan North America, Inc., when, in fact, Serra Nissan did not qualify without the falsely reported sales.

## **OVERT ACTS**

18.     In furtherance of the conspiracy and to achieve the objects thereof, defendant **RANDY D. VISSER**, and others both known and unknown to the United States Attorney, committed and caused to be committed the following overt acts, among others, in the Northern District of Alabama and elsewhere:

19.     In or around March 2013, **RANDY D. VISSER** instructed F.H., Executive Director of Serra Nissan, to do whatever was necessary to ensure that Serra Nissan hit its sales incentive goals for the month.

20.     At the time **RANDY D. VISSER** instructed F.H. to "get it done," **RANDY D. VISSER** knew that request entailed taking car sales transactions from Serra Visser Nissan and representing to Nissan North America, Inc., that the cars were sold at Serra Nissan.

21.     As a result of **RANDY D. VISSER's** instruction to F.H., J.G. created false, duplicate deal jackets to make it look like fifteen vehicles had been sold at Serra Nissan, when, in fact, they had been sold at Serra Visser Nissan.

22.     On or around June 1, 2013, **RANDY D. VISSER**, General Manager of Serra Nissan, emailed K.B. and F.H., to confirm whether the accounting was done properly when they logged the Serra Visser Nissan deals as having been sold at Serra Nissan.

23.     On or around June 3, 2013, K.B. responded to **RANDY D. VISSER** and F.H., confirming that while she did not put the deals in accounting, she had a list of the fifteen deals so she could add the sales to any report. She also explained in the email that she had J.G. create fake Serra Nissan deal jackets in the event that Nissan North America, Inc. ever requested the deals be pulled.

All in violation of Title 18, United States Code, Section 371.

## <u>NOTICE OF FORFEITURE</u>
### [18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

24.     The allegations of Count One of this Information are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States pursuant to the provision of Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

25.     Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendant is hereby notified that upon conviction of Count One of this Information the defendant **RANDY D. VISSER** shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to said violations, including, but not limited to, a money judgment in the amount of $64,800.00 in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged.

26.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek

forfeiture of any property of said Defendant up to the value of the forfeitable

property described above.

All in accordance with Title 18, United States Code, Section 981(a)(1)(C),

and Title 28, United States Code, Section 2461(c).

JOYCE WHITE VANCE
United States Attorney


*/s/*
AMANDA WICK
Assistant United States Attorney