IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
<u>SOUTHERN DIVISION</u>

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| **RANDY D. VISSER** | ) | |

## PLEA AGREEMENT

The United States of America and defendant Randy D. Visser hereby acknowledge the following plea agreement in this case:

### PLEA

The defendant agrees to plead guilty to **COUNT ONE** of the Information filed in the above-numbered and captioned matter. In exchange, the United States Attorney, acting on behalf of the United States and through the undersigned Assistant United States Attorney, agrees to recommend the disposition specified below, subject to the conditions in paragraphs **IX** and **X**.

### TERMS OF THE AGREEMENT

**I. <u>MAXIMUM PUNISHMENT</u>:**

The Parties understand that the maximum statutory punishment that may be imposed for the crime of Conspiracy, in violation of Title 18, United States Code, Section 371, as charged in COUNT ONE, is:

Defendant's Initials

a. Imprisonment for not more than 5 years;

b. A fine of not more than $250,000.00, or,

c. Both (a and b);

d. Supervised release of not more than three (3) years; and

e. Special Assessment Fee of $100 per count.

## II. **FACTUAL BASIS FOR PLEA**:

**The government is prepared to prove, at a minimum, the following facts at the trial of this case:**

The defendant, Randy D. Visser, was the General Manager at Serra Nissan, located at 1500 Center Point Parkway, Birmingham, Alabama 35215, in the Northern District of Alabama. As the General Manager at Serra Nissan during the relevant time period, Visser was responsible for overseeing sales and service, and was directly in charge of all marketing and advertising.

Serra Nissan is co-owned by Randy D. Visser's wife, Kristina Serra Visser (who owns 50% of the dealership) and his father-in-law, Anthony Serra (who owns the other 50%). Serra Visser Nissan, however, is a car dealership in Cullman, Alabama, in the Northern District of Alabama, that, during the time frame set out in the information, was co-owned by Randy D. Visser (49%), Anthony Serra (49%), and Kristina Serra Visser (2%).

Defendant's Initials

Serra Nissan and Serra Visser Nissan are franchises of Nissan North America, Inc. (hereafter, "NNA"). NNA has many financial incentive programs it uses to reward dealerships who meet specified sales requirements. Often, each incentive is for a limited time period and has very specific requirements of which cars must be sold, and when. For example, the Dealer Volume Bonus was a 45-day program with general terms of volumes of cars to be sold. The time period for that incentive began on or around February 15, 2013, and ended on or about April 1, 2013. There was also a "fast start objective" incentive program that lasted from on or about February 15, 2013, until on or about February 28, 2013. If the dealer hit the specified sales targets during this period, they would receive an additional dollar amount per car sold.

Each month, NNA sent dealers an incentive bulletin, roughly 36 pages long, that contains the rules for each incentive NNA has for the time period. The bulletin is sent to all Nissan dealerships. At the end of the bulletin, the audit process is described.

As one of the terms of its incentive program, NNA prohibited a process known as "pooling of sales." If a dealer owned or was associated with more than one dealership, it could not combine sales or attribute sales from one dealership to another in order to meet sales incentives. For example, if the sales incentive goal was 25 cars sold in one month, and Serra Visser Nissan sold 30 and Serra Nissan sold 20, the dealerships were not allowed to represent that both had sold 25 in order to meet

Defendant's Initials

the incentive. This "pooling of sales" would allow Serra Nissan to qualify for sales incentives it did not actually achieve, but for the misrepresentations of Serra Visser Nissan's sales as having occurred at Serra Nissan. Consequently, dealers were required to retail delivery report ("RDR") cars accurately, meaning, the dealer had to report where the car was actually sold.

In or around March 2013, Serra Nissan determined that it was not going to meet its sales objectives in order to qualify for that month's incentives. Realizing this, Visser instructed F.H., Serra Nissan's Director of Operations, to do whatever necessary to ensure Serra Nissan achieved its sales objectives. At the time he gave the instruction, Visser knew that it would entail misrepresenting to Nissan North America, Inc. that cars sold at Serra Visser Nissan were sold at Serra Nissan when, in fact, they were not.

After giving this instruction, fifteen cars that were sold at Serra Visser Nissan in Cullman, Alabama, were reported to Nissan North America, Inc. as having been sold at Serra Nissan, in Birmingham, Alabama. As a result, Serra Nissan was able to meet its sales targets and qualify for incentives it was not entitled to, but for the false sales locations on the RDR.

As part of the scheme, J.G., a sales manager at Serra Volkswagen, was instructed to create false documents showing the cars were sold at Serra Nissan, in the event Serra Nissan was audited by Nissan North America, Inc. K.B., the

Defendant's Initials ZV

Controller of Serra Nissan, created a list of the fifteen relevant deals to be given to J.G. to make the false deal jackets.

Visser provided the general direction for the scheme to submit false information on the RDRs to Nissan North America. The submission of that information caused wire communications to be transmitted in interstate commerce, to wit: between Serra Nissan in Alabama, and Nissan North America, Inc., in Tennessee.

Visser and others did willfully conspire and combine to knowingly participate in a scheme to defraud Nissan North America, Inc., whereby they willfully submitted materially false information, with the specific intent to defraud Nissan North America, Inc., which caused wire communications to be transmitted in interstate commerce to help carry out the scheme to defraud.

**The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.**

_____
**RANDY D. VISSER**
**DEFENDANT**

## III. COOPERATION BY DEFENDANT:

The defendant agrees to waive his Fifth Amendment privilege against self-incrimination and to provide **TRUTHFUL AND COMPLETE INFORMATION** to the government concerning any/all aspects of the charged crimes, including, but not limited to, his role/participation in the offenses, as well as the roles taken by and the extent of participation of all other persons involved in these crimes of whom the defendant has knowledge. The defendant agrees to testify against all of these individuals at any time requested by the United States, including, at any Grand Jury proceeding, forfeiture proceeding, bond hearing, pretrial hearing, trial, retrial, or post-trial hearing. **ALL SUCH INFORMATION AND TESTIMONY SHALL BE TRUTHFUL AND HONEST AND WITH NO KNOWING MATERIAL FALSE STATEMENTS OR OMISSIONS.**

Further, the defendant agrees to provide assistance and cooperation to the United States as defined and directed by the Federal Bureau of Investigation, Internal Revenue Service – Criminal Investigations Division, or any other investigative agency or body as the United States Attorney for the Northern District of Alabama may authorize, which cooperation may include the defendant's periodic submission to a polygraph examination to determine the truthfulness and accuracy of his statements and information.

Defendant's Initials

## IV. MOTION PURSUANT TO USSG § 5K1.1 AND 18 U.S.C. § 3553(e):

In the event the defendant provides assistance that rises to the level of "substantial assistance," as that term is used in USSG § 5K1.1, the United States agrees to file a motion requesting a downward departure in the defendant's sentence. Should any of the counts of conviction subject the defendant to a mandatory minimum sentence, the United States may also seek a sentence reduction below said mandatory minimum sentence, by including in its motion a recommendation pursuant to the provisions of 18 U.S.C. § 3553(e). The parties agree that the determination of whether defendant's conduct rises to the level of "substantial assistance" and/or whether defendant's conduct merits consideration under 18 U.S.C. § 3553(e) lies solely in the discretion of the United States Attorney's Office. Furthermore, the parties agree that the decision as to the degree or extent of the downward departure requested, if any, also lies in the sole discretion of the United States.

Should the government move to reduce the defendant's sentence, a motion will be filed prior to the defendant's sentencing hearing and will outline all material assistance which the defendant has provided. The parties clearly understand and acknowledge that because the defendant's plea is being offered in accordance with Rule 11(c)(1)(B), Fed.R.Crim.P., the Court will not be bound by the government's recommendation and may choose not to reduce the sentence at all.

7 of 18

Defendant's Initials

## V. **RECOMMENDED SENTENCE**:

Subject to the limitations in paragraph **X** regarding subsequent conduct and pursuant to Rule 11(c)(1)(B), Fed.R.Crim.P., the government will recommend the following disposition:

(a) That the defendant be awarded an appropriate reduction in offense level for acceptance of responsibility; the Government acknowledges that Visser has fully accepted responsibility and the resolution of the loss amount and restitution owed does not affect Visser's acceptance of responsibility;

(b) That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term consistent with the low end of the advisory United States Sentencing Guideline range as that is determined by the court on the date that the sentence is pronounced;

(c) That following the said term of imprisonment, the defendant be placed on supervised release for a period to be determined by the court, subject to the standard conditions of supervised release as set forth in U.S.S.G § 5D1.3:

(d) That the defendant be required to pay a fine in accordance with the sentencing guidelines, said amount due and owing as of the date sentence is pronounced, with any outstanding balance to be paid in full by the expiration of the term of supervised release;

Defendant's Initials

(e) That the defendant be required to pay restitution as ordered by the court on the date sentence is pronounced. If any other restitution becomes known to the government before the date of sentencing, the government reserves the right to request additional restitution;

(f) That the defendant agree to entry of an order of forfeiture as ordered by the court on the date sentencing is pronounced;

(g) That the defendant pay a special assessment fee of $100.00 and $25.00 per count, respectively, said amount due and owing as of the date sentence is pronounced.

## VI. WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF:

**In consideration of the recommended disposition of this case, I, RANDY D. VISSER, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255.**

Defendant's Initials *RV*

The defendant reserves the right to contest in an appeal or post-conviction proceeding any of the following:

(a) Any sentence imposed in excess of the applicable statutory maximum sentence(s);

(b) Any sentence imposed in excess of the guideline sentencing range determined by the court at the time sentence is imposed; and

(c) Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the Federal Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.

I, RANDY D. VISSER, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

_____
RANDY D. VISSER
DEFENDANT

Defendant's Initials _____

## VII. UNITED STATES SENTENCING GUIDELINES:

Defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's recent decision in <u>United States v. Booker</u>, the federal sentencing guidelines are **advisory** in nature. Sentencing is in the court's discretion and is no longer required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range and defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VIII. AGREEMENT NOT BINDING ON COURT:

The Parties fully and completely understand and agree that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the government is **NOT BINDING UPON THE COURT**, and that the Court is not required to accept the government's recommendation. Further, the defendant understands that if the Court does not accept the government's recommendation, he does not have the right to withdraw his plea.

## IX. VOIDING OF AGREEMENT:

The defendant understands that should he move the Court to accept his plea of guilty in accordance with, or pursuant to, the provisions of <u>North Carolina v. Alford</u>,

Defendant's Initials

400 U.S. 25 (1970), or tender a plea of *nolo contendere* to the charges, the agreement will become NULL and VOID, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained therein.

## X. SUBSEQUENT CONDUCT

**The defendant understands that should the defendant violate any condition of pretrial release or violate any federal, state, or local law, or should the defendant say or do something that is inconsistent with acceptance of responsibility, the United States will no longer be bound by its obligation to make the recommendations set forth in paragraph V of the Agreement, but instead, may make any recommendation deemed appropriate by the United States Attorney in her sole discretion.**

## XI. OTHER DISTRICTS AND JURISDICTIONS:

The parties understand and agree that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## XII. COLLECTION OF FINANCIAL OBLIGATION

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to fully disclose all assets in

Defendant's Initials ____

which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The defendant also will promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs. The defendant also agrees that the defendant's financial statement and disclosures will be complete, accurate, and truthful. Finally, the defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

## XIII. AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines. The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct. This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors which may constitute or

Defendant's Initials

relate to relevant conduct. Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any.

## XIV. TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS:

Unless otherwise specified herein, the parties understand and acknowledge that this agreement does not apply to or in any way limit any pending or prospective proceedings related to defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings. Specifically, the defendant agrees that this agreement or any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise the defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time period covered by this agreement or any other time period.

The defendant agrees to cooperate with the IRS in its civil examination, determination, assessment, and collection of income taxes related to the defendant's 2012 income tax returns. The defendant agrees to provide the IRS any documentation in the defendant's possession and/or control requested by the IRS in
14 of 18

Defendant's Initials

connection with its civil examination, determination, assessment, and collection of such income taxes prior to sentencing. The defendant further knowingly and voluntarily agrees to waive any statute of limitations with respect to assessment and collection of the defendant's individual and corporate/entity tax liabilities concerning tax year 2012.

The defendant agrees to prepare and file an amended individual income tax return, if necessary, for tax year 2012 by no later than the time of sentencing. The defendant also agrees to pay all taxes, interest, and penalties due and owing to the IRS, including all taxes, interest, and penalties on the defendant's individual and any related corporate/entity liabilities for tax year 2012, by no later than the time of sentencing.

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may

Defendant's Initials

entail, even if the consequence is his automatic removal from the United States.

## XV. DEFENDANT'S UNDERSTANDING:

I have read and understand the provisions of this agreement consisting of eighteen (18) pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence in my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

_____N/A_____
(if none, write "N/A")

I understand that this Plea Agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto. I have

Defendant's Initials _____

personally and voluntarily placed my initials on every page of this Agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this Agreement, both individually and as a total binding agreement.

_6-4-2015_
DATE

_[signature]_
RANDY D. VISSER
**Defendant**

## XVI. COUNSEL'S ACKNOWLEDGMENT:

I have discussed this case with my client in detail and have advised him of his rights and all possible defenses. My client has conveyed to me that he understands this Agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment.

I concur in the entry of the plea as indicated above and on the terms and conditions set forth herein.

_6/4/15_
DATE

_[signature]_
DAVID McKNIGHT, ESQ.
**Defendant's Counsel**

Defendant's Initials _[initials]_

## XVII. GOVERNMENT'S ACKNOWLEDGMENT:

I have reviewed this matter and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

JOYCE WHITE VANCE
United States Attorney

6/4/15
DATE

*[signature]*
AMANDA WICK
**Assistant United States Attorney**

Defendant's Initials *[initials]*